STATE OF OREGON,
*Appellant,*

*v.*

GARY DEAN BELT,
*Respondent.*

(93-1257; CA A85851)

905 P2d 862

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

J.P. Harris, II, argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

## WARREN, P. J.

■     Defendant was charged with driving under the influence of intoxicants, ORS 813.010, and being a felon in possession of a firearm, ORS 166.270. The state appeals a trial court order suppressing evidence. We reverse and remand.

The relevant facts about what occurred are not disputed. On June 8, 1993, a sheriff's office dispatcher contacted Deputy Huntsman and directed him to contact a group of women who were in front of the Pacific City Market. The dispatcher told Huntsman that the women had reported that a man had attempted to solicit them. At the market, Huntsman met with four women who gave him their names and addresses. The women were all speaking at once, but none of them disagreed with any of the statements the others were making. One of them told Huntsman that defendant had driven up to them and said something like, "I've got the money if you've got the time." Huntsman could not remember, however, which woman made that statement. Collectively, the women reported that defendant told them how he had patronized prostitution houses in Vietnam in order to "relieve" himself. The women also reported that defendant tried to get one of them to get in the car with him, and that he had offered to take them out to dinner. When they refused, defendant left. Defendant returned later and again tried to get one of them to leave with him.

The women pointed to a Ford Bronco parked across the street at a convenience store as the vehicle the man had been driving. As Huntsman continued to talk with the women, defendant got into the Bronco. They identified defendant as the man who had attempted to solicit them.

Huntsman then crossed the street to contact defendant about the women's statements. By this time, defendant had begun backing out of the parking stall. Huntsman walked up to the driver's side window, which was down. Defendant stopped his vehicle. Huntsman asked defendant if he would pull his vehicle back into the parking stall so that he could speak with him. Defendant agreed and parked his vehicle. Huntsman then told defendant what the young women had said to him. Defendant denied trying to solicit the women.

During his conversation with defendant, Huntsman noticed a strong odor of alcohol on defendant's breath and that his eyes were bloodshot and his speech was slurred. Defendant admitted drinking beer earlier in the day. Huntsman read defendant his *Miranda* rights and conducted field sobriety tests. After conducting the field sobriety tests, Huntsman arrested defendant for driving under the influence of intoxicants (DUII) and placed him in the back of the patrol car.

Huntsman then searched defendant's vehicle for additional evidence of DUII and found a loaded rifle behind the driver's seat.

Defendant was charged with DUII and being a felon in possession of a firearm. Before trial, defendant moved to suppress all of the evidence obtained by the police on the ground that he was stopped unlawfully, and therefore the search of his truck was unlawful. The trial court granted defendant's motion to suppress, holding that the stop was unlawful because the circumstances did not give rise to a "reasonable suspicion" that defendant had committed a crime. Specifically, the trial court said:

> "[T]he court finds that the women's recollection of the statements they attributed to the defendant was not precise. They could only report that the defendant said 'something like' a sentence which, at best, is ambiguous. The court finds that the women's uncertainty about the language actually used by the defendant coupled with a reference to prostitute contact in the military and the invitation of one of the women to dinner did not provide the officer with specific articulable facts which gave rise to the inference that defendant had solicited any of the women to engage in sexual conduct for a fee."

On appeal, the state first argues that there was no stop. Alternatively, it argues that the circumstances provided a reasonable suspicion that a crime had been committed, and therefore justified a stop.

We review the trial court's order granting defendant's motion to suppress for errors of law. ORS 138.220. The question is whether the facts give rise to a reasonable suspicion that a crime had been committed.

We need not decide whether the officer's contact with defendant constituted a stop, because we conclude that, even if there was a stop, the circumstances gave rise to a reasonable suspicion that defendant had committed a crime.

■■ A police officer has authority to stop and question a person if the officer "reasonably suspects" that a person has committed a crime. ORS 131.615(1).[1] Reasonable suspicion means that a peace officer "holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts * * *." ORS 131.605(4). The officer must point to specific and articulable facts that give rise to a reasonable inference that the person has committed a crime. *State v. Ehly*, 317 Or 66, 854 P2d 421 (1993). Whether facts are sufficient to give rise to reasonable suspicion sufficient to justify a stop is a question of law. *State v. Nelson*, 109 Or App 97, 817 P2d 1344 (1991), *rev den* 312 Or 589 (1992).

Defendant argues that the officer could not have reasonably suspected that he had committed a crime, because he did not have information that defendant offered to pay a fee to engage in sexual contact, which is a required element of prostitution. ORS 167.007(1)(a). Even if defendant did not expressly offer money in exchange for sex, his comments to the women created a reasonable suspicion that defendant had offered to pay a fee to engage in sexual contact.

■■ Defendant also argues that there was no reasonable suspicion because the officer did not expressly testify, and the record does not establish, that he subjectively suspected or believed that defendant had committed a crime. We disagree. It is correct that a police officer has no authority to stop a person when the officer does not subjectively believe that the defendant committed a crime, even if, objectively, the officer could have had a reasonable suspicion that the defendant had committed a crime. *State v. Olson*, 116 Or App 525, 529, 842 P2d 424 (1992).[2] However, the officer does not need to testify

---

[1] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

[2] In *Olson*, the officer testified that he did not suspect that the defendant had committed a crime when he detained her. In the present case, there was no testimony as to the officer's subjective belief.

expressly that he or she had that subjective belief; the officer's subjective belief may be inferred from the officer's actions under the circumstances. That is the case here. The officer was dispatched to meet with some women who had called in a report that a man had attempted to solicit them. The officer met with the women, who told the officer that defendant had approached them and said something like, "I've got the money if you've got the time." The permissible inference is that that was an expression of interest in trading sex for money. Part of the context was that the defendant had visited prostitutes while in Vietnam. Finally, the officer testified at the suppression hearing that he had contacted defendant "[t]o get his statement of what happened." Those facts give rise to an inference that the officer subjectively believed that defendant had solicited the women.

Given the purpose of the dispatch, the statements made to the officer by the four women, including the context of defendant's remarks about visiting prostitutes while in Vietnam, we conclude that the officer had a reasonable suspicion that defendant had committed the crime of solicitation. A stop was justified. The court erred in granting the motion to suppress.

Reversed and remanded.